**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| **REVEREND ROBERT EDWARDS,**<br>3922 Brooklyn Avenue<br>Baltimore, Maryland 21225<br><br>     *Plaintiff,*<br><br>v.<br><br>**MAYOR AND CITY COUNCIL OF<br>BALTIMORE,**<br>100 Holliday Street, Suite 250<br>Baltimore, Maryland 21202<br><br>     *Defendant.* | **Case No. _____** |

## COMPLAINT

Plaintiff, Reverend Robert Edwards ("Rev. Edwards" or "Plaintiff"), by and through his undersigned counsel, hereby files this Complaint against Defendant, Mayor and City Council of Baltimore ("City" or "Defendant"), and states as follows:

### INTRODUCTION

1.      This case arises out of the City's unconstitutional taking of private land owned by a City resident without paying just (or any) compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article III, § 40 of the Maryland Constitution, and Article 24 of the Maryland Declaration of Rights.

2.      In 2013, Rev. Edwards purchased two unimproved lots separated by a 10-foot alley located on the 600 Block of Venable Avenue and the 600 Block of E. 33rd Street, in the 14th Council District of Baltimore City, commonly known as Block 4053, Lots 95 and 13 (individually, the "Lot" and collectively, the "Properties" or "Lots").  He purchased the Properties for the specific

purpose of developing them with residential uses.   This objective was reasonable as, at that time, Lots 95 and 13 were zoned Office-Residence-2 and R-6 Garden Rowhouse Residential, respectively.   The zoning designation and density of each Lot permitted Rev. Edwards to develop his land with significant residential development as a matter of right, which included the right to build up to 40 multifamily dwelling units on Lot 95, and up to 6 rowhouse dwelling units on Lot 13.

3.      In the mid-2010s, the City undertook the process of adopting a comprehensive new zoning ordinance and zoning map known as "TransForm Baltimore."   TransForm Baltimore initially designated the Properties, as well as those in close proximity to the Properties, to be placed within a zoning district that would continue to permit the development of multifamily and rowhouse dwellings.

4.      TransForm Baltimore was made effective on June 5, 2017.   In the final version of the zoning map adopted pursuant to TransForm Baltimore, the City singled out the Properties from the adjoining parcels and downzoned them from development-friendly zoning designations to the "Open-Space Zoning District" ("Open Space"), a classification that denies Rev. Edwards the ability to develop, make use of, and benefit economically from his Properties.   As described in Art. 32, § 7-201(a) of the Baltimore City Code, "[t]he purpose of the Open-Space ('OS') Zoning District is to enhance the quality of life for City residents by permanently preserving public open space as an important public asset and critical environmental infrastructure."

5.      While the City was appropriating Rev. Edwards' private land for public use, it simultaneously rezoning the similarly situated surrounding parcels located on the 600 blocks of Venable Avenue and E. 33rd Street to the R-7 Mixed Residential District.   Unlike the Open Space Zoning District, the R-7 Zoning District authorizes the zoning and development rights Rev.

Edwards previously enjoyed.  The City had no legitimate legislative purpose for downzoning Rev. Edwards' land, obliterating his investment-backed expectations, and rendering his—and only his—Properties not economically viable.

6.      The downzoning of Rev. Edwards' Properties constitutes a taking for which the City was and is obligated to pay just compensation.  The City's refusal to compensate Rev. Edwards violates the United States Constitution, the Maryland Constitution, and the Maryland Declaration of Rights.  This action seeks to recover just compensation and related damages from the City.

## PARTIES

7.      Plaintiff Reverend Robert Edwards is an individual residing at 3922 Brooklyn Avenue, Baltimore, Maryland 21225.

8.      Defendant Mayor and City Council of Baltimore is a municipal corporation organized under the laws of the State of Maryland.  Its official name, as set forth in the Baltimore City Charter, is "Mayor and City Council of Baltimore."  *See* Charter of Baltimore City, Art. I, § 1.

## JURISDICTION AND VENUE

9.      Rev. Edwards brings this action pursuant to 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, Article III, § 40 of the Maryland Constitution, and Article 24 of the Maryland Declaration of Rights.

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1391 because it arises under the Constitution and laws of the United States of America.

11.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12.     The relief requested is authorized by 42 U.S.C. §§ 1983 and 1988.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in Baltimore City, Maryland.

## FACTS COMMON TO ALL COUNTS

*Rev. Edward Purchases the Properties for Development*

14.     Rev. Edwards acquired the Properties by Deed dated April 15, 2013 and recorded among the Land Records of Baltimore City, Maryland, in Liber 15136, folio 476.

15.     At the time, Lots 95 and 13 enjoyed the zoning map designations Office-Residence-2 and R-6 Garden Rowhouse Residential, respectively.

16.     Neither Lot had any improvements, thereby presenting Rev. Edwards with myriad development opportunities.

17.     At all relevant times, Rev. Edwards has had a legitimate, constitutionally-protected interest in the Properties.

18.     Rev. Edwards, who is employed as a bus operator for the Maryland Transit Administration ("MTA"), purchased the Properties with the specific objective of developing both Lots with residential uses, as a mechanism to provide financial stability and security for his family and his church.

19.     Rev. Edwards' objective was reasonable at the time he purchased the Properties, and for the next four years, because during that time, the zoning map designations of the Properties permitted the by-right development of up to 40 multifamily dwelling units on Lot 95, and up to 6 rowhouse dwelling units on Lot 13.

20.     The Properties are located in the Waverly neighborhood of Baltimore City, which is located in the 14th Council District.

21.     Since 2003, the 14th District has been represented on the Baltimore City Council by Councilmember Mary Pat Clarke.

22.     Shortly after closing on the purchase of the Properties, Rev. Edwards shared his development plans with members of the Waverly community as well as Councilmember Clarke.

23.     For reasons unknown to Rev. Edwards, Councilmember Clarke immediately resisted his plans.  She asked Rev. Edwards to either forego developing the Properties or sell them to the City, such that both Lots would remain vacant, undeveloped, and accessible to the surrounding community as a park.

24.     Rev. Edwards rejected Councilmember Clarke's proposal, making clear that he purchased the Properties to develop them and still intended to do so.

25.     Despite having firsthand knowledge of Rev. Edwards' development plans, between mid-2013 and June 2017, Councilmember Clarke planned, pursued, and ultimately prevailed in relegating Rev. Edwards' Properties to an undevelopable Open Space zoning map designation.

*The City Ramps Up Efforts to Downzone the Properties*

26.     Baltimore City's Zoning Code was updated for the first time in more than four decades with the enactment of Baltimore City Ordinances 16-581 and 17-015, together commonly known as the TransForm Baltimore Zoning Code ("TransForm Baltimore").

27.     TransForm Baltimore took effect on June 5, 2017.

28.     TransForm Baltimore was introduced as City Council Bill 12-0152.

29.     The First Reader Maps of TransForm Baltimore, prepared by Baltimore City's Department of Planning as a first draft of the proposed new zoning map, initially proposed to

rezone Lot 95 from the Office-Residence-2 District to the R-7 Mixed Residential ("R-7") District, and to rezone Lot 13 from the R-6 Garden Rowhouse Residential District to the R-7 District.

30.     These proposed new zoning map designations were of minimal concern to Rev. Edwards because, among other reasons: (i) all parcels adjacent to Rev. Edwards' Properties were also being rezoned to R-7; and (ii) more importantly, Rev. Edwards could still develop the Properties with the multifamily and rowhouse dwelling uses he intended under the new zoning designations.

31.     By letter dated November 4, 2015, Councilmember Clarke informed Rev. Edwards that she had "recommended" a change to the zoning map designation for Lot 95 from R-7, as proposed, to Open Space, and requested that Rev. Edwards "let [her] know of any disagreement with [her] recommendation."  In that letter, Councilmember Clarke did not reference any change to the proposed R-7 zoning designation for Lot 13.

32.     Rev. Edwards immediately voiced his objection to Councilmember Clarke's "recommendation."

33.     Councilmember Clarke disregarded Rev. Edwards' position and refused to alter the course of her personal campaign to strip Rev. Edwards' land of the zoning and development rights enjoyed by every similarly situated, neighboring property owner on the 600 blocks of Venable Avenue and E. 33rd Street.

34.     Councilmember Clarke even concealed from Rev. Edwards much of her ill-motivated efforts to relegate his private land to non-developable Open Space.  Between November 2015 and mid-2017, Rev. Edwards received no further communications from Councilmember Clarke regarding her "recommendation" to rezone the Properties to Open Space.  Rev. Edwards

reasonably assumed that Councilmember Clarke had finally acquiesced to his appeals and abandoned her effort to treat his land differently from all similarly situated, neighboring lots.

*The City Downzones the Properties to Open Space*

35.     In late spring 2017, Rev. Edwards discovered that Councilmember Clarke had prompted a revision to TransForm Baltimore which specifically rezoned the Properties to the Open Space Zoning District.

36.     At that time, Rev. Edwards lacked the financial means to develop the Properties with the residential uses permitted by right under the then-existing zoning code.  He was, however, actively negotiating with potential partners and otherwise taking action to move his development plans forward.

37.     Rev. Edwards nevertheless took action to halt this unconstitutional downzoning.

38.     On June 2, 2017, three days before TransForm Baltimore took effect, Rev. Edwards filed two applications with the Baltimore City Board of Municipal and Zoning Appeals ("BMZA"), seeking approval of certain variances to develop his land.

39.     Recognizing the need to transition from one zoning code to another, the City Council included in TransForm Baltimore a series of transition rules.  *See* Baltimore City Code, Art. 32, § 2-203.  One such rule provides that BMZA approvals of variances and conditional uses on applications filed prior to the effective date of TransForm Baltimore would remain effective notwithstanding the Code provisions in effect.

40.     Rev. Edwards filed the applications with the BMZA to effectively grandfather his zoning and development rights.

41.     Twelve days after submitting his applications to the BMZA, Councilmember Clarke sent a letter to Zoning Administrator Geoffrey Veale and BMZA Executive Director David

Tanner, in which she formally protested Rev. Edwards' development plans and "reserve[d] the right of negative appeal."

42.     The BMZA eventually heard both appeals on October 10, 2017.

43.     At the BMZA hearing on the appeals, the Waverly Improvement Association and Councilmember Clarke testified in opposition to the requested variances.  Recognizing that her unilateral actions to downzone the Properties resulted in a diminution in the value of Rev. Edwards' Properties, Councilmember Clarke testified to the BMZA that she "pledged to raise the funds" to "make [Rev. Edwards] whole," and would work with the Waverly Improvement Association to do so as the Properties are "loved by the community."

44.     By two resolutions dated October 30, 2017, the BMZA denied the appeals, perhaps influenced by counsel for the Waverly Improvement Association's suggestion that in lieu of attempting to grandfather his development rights, Rev. Edwards' proper remedy would be to seek judicial recourse for the "regulatory taking" of his Properties.

45.     The result of the BMZA's denials was that Councilmember Clarke's four-year quest became a reality—Rev. Edwards' land would thereafter have to be developed in accordance with the provisions of the Open Space Zoning District.  In other words, the Properties could not be developed at all.

### *Rev. Edwards' Efforts to Correct the City's Unconstitutional Taking Prove Unsuccessful*

46.     In the months that followed, Rev. Edwards pleaded with Councilmember Clarke to rezone the Properties to the same new zoning designation (R-7) enjoyed by all similarly situated parcels adjacent to his land.

47.     At first, Councilmember Clarke agreed to support a rezoning of the Properties to R-7.  Then, she reversed course and once again demanded that Rev. Edwards sell his land to the

City.  After Rev. Edwards rebuffed this demand, as he had done previously, Councilmember Clarke refused to communicate with Rev. Edwards any further on the subject.

48.     Forecasting Rev. Edwards' predicament, in a session of the City Council's Land Use and Transportation Committee's ("Committee") hearing on Bill 12-0152 held on September 28, 2013, Councilwoman Clarke suggested that a rezoning of private property to the Open Space Zoning District would provide the community with protection because "it would have to go through the City Council [to be rezoned] and that ain't gonna happen."

49.     In Baltimore City, piecemeal rezoning applications may only be filed by way of City Council legislation introduced by a member of the City Council.

50.     As a private citizen, Rev. Edwards is unable to file a request or otherwise apply to have his Properties "upzoned" to another zoning map designation.

51.     The "upzoning" of private land to a more favorable zoning classification is only possible if a Councilmember introduces a bill to rezone the land.

52.     Councilmember Clarke has refused to support a rezoning of Rev. Edwards' Properties.

53.     On May 21, 2019, Rev. Edwards, through counsel, wrote to pertinent City officials, including Mayor Young, City Council President Scott, Councilmember Clarke, and City Solicitor Davis.  This correspondence sought, among other things, that the City pay Rev. Edwards just compensation for taking his Properties.

54.     Almost nine months later, on February 20, 2020, the City penned a curt, three-sentence response.  The City did not address Rev. Edwards' demand for just compensation. Rather, the City asserted that Rev. Edwards' claims were barred by the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-301 *et seq.*, because notice of such claims was

not received within one year of June 5, 2017, the effective date of TransForm Baltimore.  The City's position has no merit as Rev. Edwards' claims sound in constitutional violations, not tort, thus the applicable statute of limitations is three years, not one year.

55.     Notwithstanding the unconstitutional downzoning of his land, Rev. Edwards has never relinquished title to the Properties nor wavered in his commitment to maintain them.  He continues to pay all applicable municipal bills and property taxes.  Moreover, after completing his nightshift work with the MTA, Rev. Edwards regularly travels to the Properties from his home in Brooklyn to maintain the landscaping, remove litter and debris, and otherwise keep the Properties in good order and repair, all at his own expense.

### The Downzoning Eliminated All Economically Viable Use of the Properties

56.     The Fifth Amendment to the United States Constitution states, in relevant part, "nor shall private property be taken for public use, without just compensation" ("Takings Clause").

57.     The Takings Clause was later incorporated through the Fourteenth Amendment and held to apply to state and local governments.

58.     Article III, § 40 of the Maryland Constitution prohibits the taking of private property "for public use without just compensation."

59.     Article 24 of the Maryland Declaration of Rights provides that, "no man ought to be . . . deprived of his life, liberty or property."

60.     In the seminal case *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), the United States Supreme Court held that, "when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking."  *Id.* at 1019 (emphasis in original).  When a law or regulation renders private land "without economically beneficial or productive options for

its use," the government must pay just compensation for pressing private property "into some form of public service." *Id.* at 1018.

61.     In a session of the Committee's hearing on Bill 12-0152 (TransForm Baltimore) held on October 7, 2015, Councilmember Clarke attempted to have the Committee adopt a text amendment (T-357) that would have modified the provisions of the Open Space Zoning District to expand its purpose to include private space, so that the final language in TransForm Baltimore would read: "The purpose of the Open-Space ('OS') Zoning District is to enhance the quality of life for City residents by permanently preserving public **and private** open space as an important public asset and critical environmental infrastructure."  (Emphasis added).

62.     The Committee rejected the proposed amendment.  In fact, the Assistant Director of the Department of Planning, Laurie Feinberg, specifically advised the Committee that acting to "willy-nilly apply the OS zone on private property over the objection of the property owner would put the City in a bad position."

63.     As a result of Councilmember Clarke's failure to amend the provision to include a reference to private property, Art. 32, § 7-201(a) of the Baltimore City Code (TransForm Baltimore) aptly states that "[t]he purpose of the Open-Space ('OS') Zoning District is to enhance the quality of life for City residents by permanently preserving public open space as an important public asset and critical environmental infrastructure."

64.     TransForm Baltimore, by its own terms, confirms that the Open Space Zoning District is intended to preserve *public* land as an important *public* asset for City residents.

65.     Rev. Edwards' land is neither public nor community owned; it is private land, owned by a private citizen.

66.     Prior to June 5, 2017, the effective date of TransForm Baltimore, Rev. Edwards could have developed his Properties with multiple valuable residential uses as a matter of right.

67.     TransForm Baltimore singled out Rev. Edwards' Properties from the others in close proximity, downzoning them from designations that would permit residential development to the Open Space Zoning District.

68.     TransForm Baltimore rezoned the land surrounding and similarly situated to Rev. Edwards' Properties to the R-7 Zoning District.

69.     In downzoning the Properties to the Open Space Zoning District, the City permanently appropriated Rev. Edwards' private land for use by City residents as public open space.

70.     The uses permitted in the Open Space Zoning District do not allow Rev. Edwards to make economically beneficial or productive use of his land.

71.     Rev. Edwards' land has remained economically idle since June 5, 2017.

*The Downzoning Impermissibly Impacted, Interfered With, and Restricted Use of the Properties*

72.     Rev. Edwards purchased the Properties with the reasonable, realistic, and stated expectation of developing them with residential uses.

73.     Until June 5, 2017, the zoning map designations of Rev. Edwards' land permitted significant residential development on both Lots as a matter of right.

74.     The downzoning of the Properties to the Open Space Zoning District not only interfered with Rev. Edwards' distinct investment-backed expectations, it also obliterated the myriad development opportunities that were available to Rev. Edwards prior to June 5, 2017.

75.     The character and nature of the City's actions in targeting Rev. Edwards' Properties for downzoning to the Open Space Zoning District, while simultaneously permitting all

-12-

neighboring parcels to enjoy a zoning map designation (R-7) permitting residential development and use, demonstrates that the downzoning was specific, deliberate, and personal to Rev. Edwards.

76.     Under *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 125 (1978) and its progeny, TransForm Baltimore economically impacted, interfered with, and restricted use of the Properties.

77.     TransForm Baltimore, as applied to Rev. Edwards' Properties, is a confiscatory regulation.

### *The City's Refusal to Pay Just Compensation to Rev. Edwards is Unconstitutional*

78.     The City's downzoning of the Properties to Open Space and refusal to pay Rev. Edwards just compensation amounts to an unconstitutional taking.

79.     Both the United States and Maryland Constitutions mandate that Rev. Edwards receive just compensation from the City for the taking of his Properties.

80.     Under 42 U.S.C. § 1988, Rev. Edwards is also entitled to recover his attorneys' fees, expert witness fees, and other costs incurred in this matter.

**COUNT I**
**42 U.S.C. § 1983 – Taking of Private Property Without Just Compensation**

81.     Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

82.     The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the government from taking private property without paying "just compensation."

83.     The Takings Clause of the Fifth Amendment is applicable to state and local governments by incorporation through the Fourteenth Amendment.

84.     Prior to June 5, 2017, the effective date of TransForm Baltimore, Rev. Edwards had numerous options available to develop the Properties as a matter of right.

85.     Through TransForm Baltimore, the City downzoned Lots 95 and 13 from zoning districts that permitted residential development to the Open Space Zoning District, pursuant to which the Properties are undevelopable.

86.     The economic impact of the downzoning was and is significant.

87.     Among other things, the Open Space zoning map designation prevents Rev. Edwards from developing or making economically viable or productive use of his land.

88.     The downzoning also interfered with Rev. Edwards' distinct investment-backed expectations and imposed a substantial economic restriction on the Properties.

89.     The economic impact on, interference with, and restrictions of the Properties amounts to a taking for which Rev. Edwards is entitled to just compensation.

90.     The City's failure to pay just compensation constitutes an unconstitutional taking.

WHEREFORE, Plaintiff, Reverend Robert Edwards, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, Mayor and City Council of Baltimore, and order that: (i) the City's downzoning of the Properties to the Open Space Zoning District violated the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983; (ii) the downzoning of the Properties constituted a taking; (iii) Plaintiff is entitled to just compensation from the City for the taking, plus interest; (iv) Plaintiff is entitled to payment of all costs incurred to maintain the Properties since the taking occurred on June 5, 2017, plus interest; (v) Plaintiff is entitled to payment, by the City, of his attorneys' fees, expert witness fees, and other costs pursuant to 42 U.S.C. § 1988; and (vi) Plaintiff is entitled to such other and further relief as the Court may deem just and proper.

## COUNT II
### 42 U.S.C. § 1983 – Equal Protection Violation

91.     Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

92.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state "shall deny to any person within its jurisdiction, the equal protection of the laws . . ."

93.     TransForm Baltimore downzoned the Properties from zoning districts that permitted residential development to the Open Space Zoning District, pursuant to which the Properties are undevelopable.

94.     The Open Space zoning map designation prevents Rev. Edwards from developing or making economically viable or productive use of his land.

95.     All parcels adjacent and similarly situated to the Properties were rezoned to the R-7 Zoning District.  This zoning map designation permits the owners of those parcels to development them with a number of residential uses, and enjoy the economic benefits and uses of their land.

96.     Initial drafts of TransForm Baltimore proposed to rezone the Properties to R-7, consistent with all adjacent lots.

97.     Then, however, Councilmember Clarke got involved.

98.     Councilmember Clarke spearheaded a multiyear effort, in part concealed from Rev. Edwards and in part over his strenuous objections, to intentionally downzone the Properties to the Open Space Zoning District and treat Rev. Edwards' land disparately from all similarly situated lots.

99.     Councilmember Clarke accomplished her goal with the enactment of TransForm Baltimore.

100.    The City's decision to treat Rev. Edwards differently from similarly situated landowners, and to strip his Properties of their economic benefit, was done without any legitimate legislative purpose.

101.    Further, the downzoning of the Properties was arbitrary and capricious.

102.    The disparate treatment of the Properties, and exclusion of them from the R-7 zoning map designation enjoyed by all surrounding parcels, is not rationally related to any legitimate governmental interest.

103.    The intentional, targeted downzoning of the Properties disproportionately affected Rev. Edwards by, among other things, rendering his land undevelopable and not economically viable.

104.    The City's actions violated Rev. Edwards' right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff, Reverend Robert Edwards, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, Mayor and City Council of Baltimore, and order that: (i) the City's downzoning of the Properties to the Open Space Zoning District violated the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983; (ii) the downzoning of the Properties violated Rev. Edwards' constitutional equal protection rights; (iii) Plaintiff is entitled to compensatory damages from the City, in an amount to be determined at trial, plus interest; (iv) Plaintiff is entitled to payment, by the City, of his attorneys' fees, expert witness fees, and other costs pursuant to 42 U.S.C. § 1988; and (v) Plaintiff is entitled to such other and further relief as the Court may deem just and proper.

## COUNT III
### 42 U.S.C. § 1983 – Due Process Violation

105.    Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

106.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state shall deprive an individual of their property "without due process of law . . ."

107.    Rev. Edwards has a constitutionally protected interest in the Properties, including their associated economic values and opportunities.

108.    Art. 32, § 7-201(a) of the Baltimore City Code (TransForm Baltimore) describes the "purpose of the Open Space ('OS') Zoning District" as "permanently preserving public open space as an important public asset and critical environmental infrastructure."

109.    TransForm Baltimore downzoned the Properties from zoning districts that permitted residential development to the Open Space Zoning District, pursuant to which the Properties are undevelopable.

110.    By downzoning the Properties, the City denied Rev. Edwards the economic benefit of his private land and deprived Rev. Edwards of his constitutionally protected interest in property without due process of law.

111.    The City's selective decision to downzone Rev. Edwards' Properties to the Open Space Zoning District, while simultaneously mapping all similarly situated and neighboring parcels to a zoning map designation (R-7) that permits residential development, was deliberate and egregious.

112.    The downzoning of Rev. Edwards' land serves no legitimate legislative purpose and falls far beyond the outer limits of legitimate governmental action.

113.    The councilmember representing the district in which Rev. Edwards' Properties are located, Councilmember Clarke, has refused to communicate with him regarding the unconstitutional downzoning of his Properties.

114.    Because private citizens of Baltimore City cannot unilaterally submit applications to request the rezoning of property to another zoning classification, no process could cure the injustice inflicted upon Rev. Edwards.

115.    The downzoning of Rev. Edwards' land constitutes a deprivation of his substantive due process rights under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff, Reverend Robert Edwards, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, Mayor and City Council of Baltimore, and order that: (i) the City's downzoning of the Properties to the Open Space Zoning District violated the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983; (ii) the downzoning of the Properties violated Plaintiff's constitutional due process rights; (iii) Plaintiff is entitled to compensatory damages from the City, in an amount to be determined at trial, plus interest; (iv) Plaintiff is entitled to payment, by the City, of his attorneys' fees, expert witness fees, and other costs pursuant to 42 U.S.C. § 1988; and (v) Plaintiff is entitled to such other and further relief as the Court may deem just and proper.

### COUNT IV
### Violation of the Maryland Constitution –
### Taking of Private Property Without Just Compensation

116.    Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

117.    Article III, § 40 of the Maryland Constitution prohibits the government from taking private property "for public use without just compensation."

118.    Article 24 of the Maryland Declaration of Rights prohibits the enactment of any law that deprives any person "of his life, liberty, or property."

119.    Prior to June 5, 2017, the effective date of TransForm Baltimore, Rev. Edwards had numerous options available to develop the Properties as a matter of right.

120.    Through TransForm Baltimore, the City downzoned Lots 95 and 13 from zoning map designations that permitted residential development to the Open Space Zoning District, pursuant to which the Properties are undevelopable.

121.    The economic impact of the downzoning was and is significant.

122.    Among other things, the Open Space zoning map designation prevents Rev. Edwards from developing or making economically viable or productive use of his land.

123.    The downzoning also interfered with Rev. Edwards' distinct investment-backed expectations and imposed a substantial economic restriction on the Properties.

124.    The economic impact on, interference with, and restrictions of the Properties amounts to a taking for which Rev. Edwards is entitled to just compensation.

125.    The City's failure to pay just compensation constitutes an unlawful taking.

WHEREFORE, Plaintiff, Reverend Robert Edwards, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, Mayor and City Council of Baltimore, and order that: (i) the City's downzoning of the Properties to the Open Space Zoning District violated Article 24 of the Maryland Declaration of Rights and Article III, § 40 of the Maryland Constitution; (ii) the downzoning of the Properties constitutes a taking; (iii) Plaintiff is entitled to just compensation from the City for the taking, plus interest; (iv) Plaintiff is entitled to payment of all costs incurred to maintain the Properties since the taking occurred on June 5, 2017, plus interest; (v) Plaintiff is entitled to payment, by the City, of his attorneys' fees, expert witness fees, and other

costs; and (vi) Plaintiff is entitled to such other and further relief as the Court may deem just and proper.

**COUNT V**
**Violation of the Maryland Declaration of Rights – Equal Protection**

126.    Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

127.    The equal protection rights afforded by the Fourteenth Amendment to the United States Constitution are embodied in Article 24 of the Maryland Declaration of Rights.

128.    TransForm Baltimore downzoned the Properties from zoning map designations that permitted residential development to the Open Space Zoning District, pursuant to which the Properties are undevelopable.

129.    The Open Space zoning map designation prevents Rev. Edwards from developing or making economically viable or productive use of his land.

130.    All parcels adjacent and similarly situated to the Properties were rezoned to the R-7 Zoning District.  This zoning map designation permits a property owner to develop residential uses on its property and enjoy the economic benefits and uses of its land.

131.    Initial drafts of TransForm Baltimore proposed to rezone the Properties to the R-7 Zoning District, consistent with all adjacent lots.

132.    Then, however, Councilmember Clarke got involved.

133.    Councilmember Clarke spearheaded a multiyear effort, in part concealed from Rev. Edwards and in part over his strenuous objections, to intentionally downzone the Properties to the Open Space Zoning District and treat Rev. Edwards' land disparately from all similarly situated lots.

134.   Councilmember Clarke accomplished her goal with the enactment of TransForm Baltimore.

135.   The City's decision to treat Rev. Edwards differently from similarly situated landowners, and to strip his Properties of their economic benefit, was done without any legitimate legislative purpose.

136.   Further, the downzoning of the Properties was arbitrary and capricious.

137.   The disparate treatment of the Properties, and exclusion of them from the R-7 zoning map designation enjoyed by all surrounding parcels, is not rationally related to any legitimate governmental interest.

138.   The intentional, targeted downzoning of the Properties disproportionately affected Rev. Edwards by, among other things, rendering his land undevelopable and not economically viable.

139.   The City's actions violated Rev. Edwards' right to equal protection of the laws under Article 24 of the Maryland Declaration of Rights.

WHEREFORE, Plaintiff, Reverend Robert Edwards, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, Mayor and City Council of Baltimore, and order that: (i) the City's downzoning of the Properties to the Open Space Zoning District violated the Maryland Declaration of Rights; (ii) the downzoning of the Properties violated Rev. Edwards' guarantee of equal protection under the law; (iii) Plaintiff is entitled to compensatory damages from the City, in an amount to be determined at trial, plus interest; (iv) Plaintiff is entitled to payment, by the City, of his attorneys' fees, expert witness fees, and other costs; and (v) Plaintiff is entitled to such other and further relief as the Court may deem just and proper.

## COUNT VI
### Violation of the Maryland Declaration of Rights – Due Process Violation

140.    Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

141.    Article 24 of the Maryland Declaration of Rights, entitled "Due Process," provides that "no man ought to be . . . deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

142.    Rev. Edwards has a constitutionally protected interest in the Properties, including their associated economic values and opportunities.

143.    Art. 32, § 7-201(a) of the Baltimore City Code (TransForm Baltimore) describes the "purpose of the Open Space ('OS') Zoning District" as "permanently preserving public open space as an important public asset and critical environmental infrastructure."

144.    TransForm Baltimore downzoned the Properties from zoning districts that permitted residential development to the Open Space Zoning District, pursuant to which the Properties are undevelopable.

145.    By downzoning the Properties, the City denied Rev. Edwards the economic benefit of his private land and deprived Rev. Edwards of his constitutionally protected interest in property without due process of law.

146.    The City's selective decision to downzone Rev. Edwards' Properties to the Open Space Zoning District, while simultaneously mapping all similarly situated and neighboring parcels to a zoning map designation (R-7) that permits residential development was deliberate and egregious.

147.    The downzoning of Rev. Edwards' land serves no legitimate legislative purpose and falls far beyond the outer limits of legitimate governmental action.

148.    The councilmember representing the district in which Rev. Edwards' Properties are located, Councilmember Clarke, has refused to communicate with him regarding the unconstitutional downzoning of his Properties.

149.    Because private citizens of Baltimore City cannot unilaterally submit applications to request the rezoning of property to another zoning classification, no process could cure the injustice inflicted upon Rev. Edwards.

150.    The downzoning of Rev. Edwards' land constitutes a deprivation of his substantive due process rights under Article 24 of the Maryland Declaration of Rights.

WHEREFORE, Plaintiff, Reverend Robert Edwards, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant, Mayor and City Council of Baltimore, and order that: (i) the City's downzoning of the Properties to the Open Space Zoning District violated Article 24 of the Maryland Declaration of Rights; (ii) the downzoning of the Properties violated Plaintiff's constitutional due process rights; (iii) Plaintiff is entitled to compensatory damages from the City, in an amount to be determined at trial, plus interest; (iv) Plaintiff is entitled to payment, by the City, of his attorneys' fees, expert witness fees, and other costs; and (v) Plaintiff is entitled to such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Harris W. Eisenstein_____*
Harris W. Eisenstein (Bar # 29694)
Caroline L. Hecker (Bar # 28207)
Jeffrey M. Lichtstein (Bar # 20731)
Rosenberg Martin Greenberg, LLP
25 S. Charles Street, 21st Floor
Baltimore, Maryland 21201
Phone: (410) 727-6600
Fax: (410) 727-1115
heisenstein@rosenbergmartin.com
checker@rosenbergmartin.com
jlichtstein@rosenbergmartin.com

*Counsel for Plaintiff,*
*Reverend Robert Edwards*